

1  Michael H. Crosby (SBN 125778)
   *D. F. Garrettson House*
2  2366 Front Street
   San Diego, CA 92101
3  Telephone:  (619) 696-7330
   Facsimile:   (619) 239-5872
4

5  Attorney for Plaintiff JACOB CALANNO

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10  JACOB CALANNO, a California          )  **CASE NO. 07 CV 2052 BTM POR**
    citizen,                            )
11                                      )
                                        )
12              Plaintiff,              )  **PLAINTIFF'S MEMORANDUM IN**
                                        )  **OPPOSITION TO MOTION TO DISMISS**
13  vs.                                 )
                                        )
14  TERRA VAC CORPORATION, a            )  Date:        May 2, 2008
    California corporation; TERRA-VAC,  )  Time:        11:00 a.m.
15  INC., a corporation, dba TERRA-VAC, )  Courtroom:   15
    P.R.; and DOES 1 through 100,       )
16  inclusive,                          )  **NO ORAL ARGUMENT UNLESS**
                                        )  **REQUESTED BY THE COURT**
17              Defendants.             )
    _____   )
18

19         Plaintiff JACOB CALANNO ("CALANNO" or "Plaintiff") submits the following

20  response in opposition to Defendants TERRA VAC CORPORATION and TERRA-VAC.,

21  INC.'s ("TERRA-VAC" or "Defendants") motion to dismiss Plaintiff's claims.

22                                  **I.**

23                       **FACTUAL ALLEGATIONS**

24         Plaintiff worked for nine (9) years at El Centro Naval Air Facility ("Airbase") under

25  a contract between a series of companies and the U.S. Navy.  Plaintiff was employed

26  continuously by each company who obtained the Airbase environmental contract.  By

27  2005, Plaintiff was senior incinerator operator and field operations supervisor for

28  Defendants.

                                    1

1    As part of the contract, Defendants and their predecessors dug wells and drew

2    water from the bottom by use of "slurp tubes."  Mixed in and with the water were

3    contaminant vapors such as lead, mercury, aviation fuel and sewage.  One of Plaintiff's

4    duties was to separate and incinerate the contaminant vapors.  The slurp tubes also

5    brought up debris, which was trapped in a filter screen, and the filter was cleaned

6    manually.

7    James Keegan, Defendants' project manager, directed Plaintiff to raise the slurp

8    tube three feet off the bottom of the wells.  This resulted in reducing the effluent trapped

9    in the filter, thus benefitting Defendants by cutting filter supply costs and labor costs.

10   Raising the tubes, however, resulted in an inability to bring up the toxic vapors that

11   Plaintiff was employed to incinerate.  Keegan also ordered that the gas used for

12   calibrating the meter that monitored contaminants be changed from methane to hexane,

13   which caused the numbers Defendants reported to Navy to increase, even if the actual

14   performance did not change.

15   To monitor performance of the cleanup contract, the Navy held monthly meetings

16   with Defendants' personnel, including Plaintiff and Keegan.  It also required maintenance

17   of VEP Monitoring Logs, which were provided to the Navy for review.

18   The result of Defendants' manipulations was to compromise the efficiency of the

19   project and damage the wells if they were not maintained properly.  At meetings with

20   Navy personnel, Vice President Jim Keegan misrepresented these manipulations and

21   misrepresented the performance and effectiveness of the vapor removal.  Since

22   Defendants had a performance-based contract with the Navy, and since renewal of

23   Defendants' contract was contingent on a positive performance review, Keegan's

24   misleading statements were intended to and did defraud the federal government, and

25   were intended to and did benefit Defendants.

26   In late September or early October 2005, Plaintiff discovered that Defendants

27   were not in compliance with regulations of the California Air Pollution Control Board,

28   which sets a maximum particulant count for emissions.  Plaintiff immediately reported

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

1   this to Keegan on his daily report form.  Plaintiff suspected that Defendants were

2   misrepresenting its emissions to the Navy.

3           On October 5, 2005 Plaintiff informed the Navy of Defendants' fraudulent

4   activities.  Although Plaintiffs' report was anonymous, there are few, if any, other

5   employees of Defendants who could have known all the facts contained in Plaintiff's

6   complaint.  In fact, one Navy officer told Plaintiff that Defendants would figure out who

7   made the report.  The Navy subsequently hired Bechtel Co. to conduct an independent

8   audit of Defendants.  Bechtel's report confirmed Plaintiff's concerns.

9           On October 26, 2005, Keegan informed Plaintiff that he was being terminated.

10  His last day of work was October 28, 2005.  Keegan alleged poor performance, but was

11  unable to provide any specific incidents to back up his assertion. Defendants falsely

12  reported that they terminated Plaintiff as its purported "corrective response" to criticisms,

13  errors and fraud identified by investigators.

14                                          **II.**

15              **STANDARDS GOVERNING MOTIONS TO DISMISS**
                          **UNDER RULE 12(b)(6)**

16

17          "The motion to dismiss for failure to state a claim is viewed with disfavor and is

18  rarely granted."  (*Gilligan v. Jamco Development Corporation,* 108 F.3d 246, 249 (9th Cir.

19  1997) (internal quotes omitted).)  Rule 12(b)(6) dismissals are proper only in

20  "extraordinary cases."  (*United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir.

21  1981).)  The complaint must be construed in the light most favorable to plaintiff.  (*Parks*

22  *School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).)  Courts must

23  assume that all general allegations "embrace whatever specific facts might be necessary

24  to support them."  (*Peloza v. Capistrano Unified School Dist.,* 37 F.3d 517, 521 (9th Cir.

25  1994).)

26          Concerning statute of limitations challenges, even where the facts alleged in the

27  complaint are beyond the statutory period, dismissal is proper "only if the assertions of

28  the complaint, made with the required liberality, would not permit the plaintiff to prove

---

3

1   that the statute [had been] tolled."  (*Cervantes v. City of San Diego,* 5 F.3d 1273, 1275

2   (9th Cir. 1993) [internal quotes omitted].)

3                                        III.

4              **THE MOTION TO DISMISS THE FIRST CAUSE OF ACTION**
                                **SHOULD BE DENIED**

5

6   **A.    The Retaliation Protection of FCA Section 3730(a) Is Available to Plaintiff
         Because He Was Investigating Fraud.**

7

8              TERRA-VAC argues that CALANNO's First Cause of Action should be dismissed

9   because plaintiff has not alleged that he has filed a *qui tam* action under the False

10  Claims Act ("FCA"), 31 USC § 3729 *et seq.*, against Defendant.  Notably, TERRA-VAC

11  has no case law supporting its challenge.  In fact, courts do not require plaintiffs seeking

12  a remedy for retaliation under 31 USC § 3730(h) to file a *qui tam* action.

13             Subdivision (h) of the statute requires: "(1) the employee must have been

14  engaging in conducted protected under the act; (2) the employer must have known that

15  the employee was engaging in such conduct; and (3) the employer must have

16  discriminated against the employee because of her protected conduct."  (*United States*

17  *ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir. 1996) (citations omitted).)

18             While the FCA only protects employees whose actions were "'in furtherance of an

19  action under the FCA,' [s]pecific awareness of the FCA [by the employee] is not

20  required."  The FCA requires only that "the plaintiff be investigating matters which are

21  calculated, or could reasonably lead, to a viable FCA action."  (*Id.*, citations omitted.)

22             The leading case interpreting 31 USC § 3730(h) is *United States ex rel. Yesudian*

23  *v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998).  The employer in *Yesudian* argued

24  as TERRA-VAC does here that plaintiff must file an action under FCA to claim its

25  protection from retaliation.[1]  The D.C. Circuit disagreed:

26  _____

27         [1]The university in *Yesudian* conceded, at least, that "it is sufficient that a plaintiff be investigating
    matters that 'reasonably could lead' to a viable False Claims Act case."  TERRA-VAC does not even
28  acknowledge this basic principle, which is based on the plain language of §3730(h): "investigation for . . .
    an action filed or *to be filed*."  (Emphasis added.)

                                          4

"There is nothing in that language to suggest that the employee must already have discovered a completed case. To the contrary, § 3730(h) expressly includes 'investigation for . . . an action filed or to be filed' within its protective cover. This manifests Congress' intent to protect employees while they are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together. *See Neal v. Honeywell Inc.,* 33 F.3d 800, 864 (7th Cir. 1994). Indeed, it is for this reason that courts have held employees' activities protected although they have not filed qui tam suits. *See id.* at 864-65; *Childree v. UAP/GA AG CHEM., Inc.*, 92 F.3d 1140, 1144, 1146 (11th Cir. 1996); *United States ex rel. Ramseyer [v. Century Healthcare Corp.]*, 90 F.3d 1514, 1522 (10th Cir. 1996)]. And it is for this reason that the district court erred in holding Yesudian's conduct was unprotected because 'he never initiated . . . a private qui tam suit.'" (*Yesudian, supra*, 153 F.3d at 739-740 (emphasis in *Yesudian)*.)

While the employee need not have filed a *qui tam* action, he must have been investigating "false or fraudulent" claims. (*Yesudian, supra,* 153 F.3d at 840; *Hopper, supra,* 91 F.3d at 1269.)

Here, TERRA-VAC was engaged in actions intended to deceive the U.S. Navy by overstating its ability to trap and incinerate toxic vapors, by changing the gas needed to calibrate the monitoring equipment so that the contaminants monitored would appear to increase, and by artificially reducing costs. (Complaint ¶ 13.) Defendant's officer falsified facts in meetings and reports to the U.S. Navy. (Complaint ¶¶ 14, 15.) CALANNO discovered that TERRA-VAC was not in compliance with applicable state standards, reported it, got TERRA-VAC's explanation for the problem, then investigated TERRA-VAC's explanation further and found it to be false. (Complaint ¶ 16.)

CALANNO was investigating false or fraudulent claims. He was fired as a direct result of his investigation and reports to the U.S. Navy. (Complaint ¶¶ 11-18, 23.) He thus is protected by 31 USC § 3730(h).

**B.    The Section 3730(h) Claim Pled is Timely and Proper**

**1.    There Is No Administrative Remedy for Plaintiff to Exhaust**

Occasionally a legal argument asserted (without authority) is so far off base that there is no case specifically available to refute it. TERRA-VAC's contention that Plaintiff

1  should have exhausted some hypothetical administrative remedy is such a specimen.

2  TERRA-VAC implies that CALANNO should have filed with the California

3  Department of Fair Employment and Housing ("DFEH") or the Equal Employment

4  Opportunity Commission ("EEOC"), or some such agency.  It cannot, however, offer any

5  authority that DFEH or EEOC offers any remedy for a standard wrongful termination in

6  violation of public policy claim, must less a claim under the False Claims Act.  A claimant

7  must file with DFEH or EEOC for claims arising from "status" discrimination in

8  employment.  (See Government Code section (Gov.C. §) 12965(b).)

9  The Fair Employment and Housing Act ("FEHA"), Gov.C. § 12940(a), offers

10  remedies for discrimination based upon *race, religious creed, color, national origin,*

11  *ancestry, physical disability, medical condition, marital status, sex or sexual orientation*.

12  Gov.C. § 12940(h) outlines FEHA's protection against retaliation, but it protects only

13  those who have opposed or complained about employment discrimination or

14  harassment.  (*See Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1047 (2005).)  There

15  is no administrative filing requirement for common law wrongful termination claims (*see,*

16  *e.g., Rojo v. Kliger*, 52 Cal.3d 65, 88 (1990); *see also Mathieu v. Norrell Corp.*, 115

17  Cal.App.4th 1174, 1189-1190 (2004)), nor for FCA claims.

18  There is simply nothing in the statutory schemes of FEHA, EEOC or FCA to

19  suggest that administrative filing of the retaliation is required.

20  **2.    The Complaint Was Filed Timely**

21  TERRA-VAC states incorrectly that the statute of limitations runs from *notice* of

22  termination, not the actual date last worked.  While this was once thought to be the law,

23  the California Supreme Court clarified this point in *Romano v. Rockwell Int'l., Inc.*, 14

24  Cal.4th 479, 491 (1996).  The *Romano* decision corrects previous opinions that the

25  statute began to run upon notice of adverse action.  *Smith v. United Parcel Service*, 65

26  F.3d 266, 268 (2nd Cir. 1995), cited by Defendants, does not reflect California law.

27  While TERRA-VAC does not discuss this point, the proper statute of limitation in

28  an FCA case brought in the federal courts of California is the same as the most nearly-

1    analogous claim–wrongful termination in violation of public policy.  (*See Graham County*

2    *Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 545 U.S. 409, 422, 125 S.Ct.

3    2444, 2452 (2005); *U.S. ex rel. Lujan v. Hughes Aircraft*, 162 F.3d 1027, 1035 (9th Cir.

4    1998).)  At the time *Lujan* was decided, the governing statute of limitations was stated in

5    California Code of Civil Procedure section ("CCP §) 340(3); the limit was one year.[2]

6    However, beginning in 2003, that statute (primarily governing personal injury actions)

7    was superseded by CCP § 335.1.  Section 335.1 provides a two-year statute of

8    limitations, and governs ordinary wrongful termination actions.  (Chin, *California Practice*

9    *Guide: Employment Litigation* (Rutter Group 2007) §5:251.)

10        TERRA-VAC correctly reports that Plaintiff was terminated October 28, 2005

11    (Complaint, ¶ 18), and that the complaint was filed on October 29, 2005.  The filing is

12    timely, however, because filing on October 25-26, 2007 was impossible: this Court was

13    closed "[d]ue to the extensive fires in San Diego County . . . " and did not reopen until

14    October 29, 2007.  (*See* United States District Court, Southern District of California,

15    Public Notice dated October 25, 2007.)  The complaint was filed constructively, therefore,

16    on October 25, 2007.  As such, it was filed within two years of discharge, and is timely.

17    **C.    The Second Cause of Action For Misrepresentation to Potential Employers Is**
      **Not Subject to Dismissal Before Discovery.**

18

19        The Second Cause of Action for misrepresentation to a potential employer(s) is

20    well-pled.  However, as Plaintiff's counsel informed Mr. Vrevich when he questioned the

21    statutory basis, the complaint erroneously cites to California's Civil Code, not the Labor

22    Code ("LC").

23        **1.    The Three-Year Statute of Limitations Applies to Actions Created by**
            **Statute.**

24

25        The First Cause of Action is based on LC §§ 1050 and 1054, which provide civil

26    liability against any former employer that, "by any misrepresentation prevents or attempts

27    _____

28        [2]That section, with the reference to personal injury claims deleted, is now denominated CCP §
      340(c).

1    to prevent the former employee from obtaining employment. . . ."  (LC § 1050.)  This

2    liability was created by statute in 1937.  Like any liability created by statute, the statute of

3    limitation is found in CCP §338(a), which requires a plaintiff to bring "**a[n] action upon a**

4    **liability created by statute**, other than penalty or forfeiture, **within three years**."

5    [Emphasis added.]

6        Defendant cited no case supporting its assumption that the one-year statute

7    established by CCP § 340(c) applies to a LC § 1054 claim for interference with

8    prospective employment.  "Misrepresentation" claims are not identified in the statute

9    itself.  Plaintiff could find no case specifically addressing the proper statute for a LC

10   §1054 claim.  However, in an analogous case, the legislature imposed liability for

11   fraudulent solicitation by dance studios, CCP §1812.50 *et seq.* ("Dance Act").  In *Holland*

12   *v. Nelson*, 5 Cal.App.3d 308 (1970), the appellate court confirmed the three-year statute

13   of section 338(a) applied to Dance Act claims.

14       Since the liability for interfering with prospective employment by misrepresentation

15   was created when the statute was created in 1937, the three-year statute set forth in

16   CCP § 338(a) applies.

17       **2.    Plaintiff May Prove that Misrepresentations Occurred Recently.**

18       Even if the one year statute did apply, however, there is nothing in the complaint

19   that establishes that the misrepresentation(s) pled occurred more than one year before

20   the filing of the complaint.  Under rules governing Rule 12(b)(6) motions, set forth in

21   Section II above, the motion to dismiss the Second Cause of Action as time-barred

22   should be denied.

23       **3.    The Qualified Privilege Does Not Apply; If it Did, it Would Be**
             **Overcome.**
24

25       Defendant also argues that the *qualified privilege* of Civil Code section ("CC §")

26   47(c) bans the interference with potential employment cause of action.  It contends that

27   Plaintiff has not overcome the qualified privilege by pleading "malice" specifically enough.

28       First, there is an apparent conflict between CC § 47(c) and LC § 1050.  Clearly,

1   the legislature in 1937 determined that it was "not okay" to misrepresent important facts

2   to a prospective employer if it prevents or attempts to prevent the former employee from

3   getting the job.  Section 48(c) , on the other hand, *assuming it applies to LC § 1050*

4   *misrepresentations*,[3] may be asserted as a basis for Rule 12(b)(6) dismissal under some

5   state law cases.  However, *federal law* governs the application of Rule 12(b)(6), and

6   those principles apply here.  Plaintiff has pled "malice" (Complaint ¶ 29.)  Under state

7   "code pleading" rules, that probably would not be enough.  However, under federal

8   "notice pleading" requirements, the court assumes that a general allegation, such as

9   "Defendants' false reports . . . constitute malice . . ." (*id*.), embraces whatever specific

10  facts that might be proved to establish it.  Therefore, malice need not be pled more

11  specifically.

12       Defendant overlooks the fact that even if greater specificity were required, Plaintiff

13  has alleged ample support in his "Factual Allegations" section, particularly in paragraphs

14  16-18, which, read liberally, allege that CALANNO was discharged in retaliation for

15  investigating fraud and reporting it to the U.S. Navy.  Certainly such a retaliatory action is

16  malicious.  Thus, under any pleading standard, malice is pled, and any qualified privilege

17  is overcome.

18                                         **IV.**

19                **THE THIRD CAUSE OF ACTION FOR LIBEL AND SLANDER**
                              **SHOULD NOT BE DISMISSED**
20

21       Defendant argues that Plaintiff's allegations of libel and slander are time barred

22  and are subject to the qualified privilege of CC § 47(c).  Plaintiff agrees that the one-year

23  statute of limitations of CCP § 340 applies to this cause of action, but the qualified

24  privilege may or may not apply, and certainly does not apply on the face of the

25

26

27  _____

28      [3]There is a specific protection set forth in LC § 1053 for *truthful statements* provided to potential
    employers.  This suggests there is no privilege for *untruthful statements* under this statutory scheme.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

1  complaint.[4]  In any case, the principles guiding the court under Rule 12(b)(6) apply here

2  as well.

3      Under either federal or state law, this motion alleging that the Third Cause of

4  Action is time-barred would be denied.  A demurrer:

5      ". . . does not lie where the complaint merely shows that the
       action may have been barred.  It must appear affirmatively
6      that, upon the facts stated, the right of action is necessarily
       barred."  (*Pulver v. Avco Financial Servcs.,* 182 Cal.App.3d
7      622, 635-636 (1986) [citation, internal quotation marks
       omitted].)

8

9  Here, there is no allegation that all statements ceased by or before October 25, 2006.

10  Since the complaint does not preclude proof of defamatory publications after October 25

11  or 29, 2006, the motion should be denied.

12      This is not just a technicality.  State courts have recognized that a statute of

13  limitations defense should not be upheld prematurely.  It is "normally a *question of fact,*

14  when the uncontradicted facts *established through discovery,* are susceptible of only one

15  inference. . . ."  (*Stalberg v. Western Title Ins. Co.,* 27 Cal.App.4th 925, 929 (1994)

16  (emphasis added); *see Cervantes, supra.*)  The proper vehicle for a statute of limitations

17  challenge is the motion for summary judgment.  (*Id.*; *see also Jolly v. Eli Lilly Co.,* 44

18  Cal.3d 1103, 1109-1111 (1988).)

19                              **V.**

20                         **CONCLUSION**

21      This motion should be denied and discovery should commence.  Should the Court

22  determine that further facts need be pled, CALANNO respectfully requests leave to

23  amend his complaint.

24

DATED: April 18, 2008            s/Michael H. Crosby

25                               Attorney for Plaintiff JACOB CALANNO
                                 E-mail: mhcrosby@dfghlaw.com
26

27

28      [4]There is no indication in the text of the complaint that the defamatory words were spoken in a
    potentially privileged context.  As such, the qualified privilege cannot be the basis for a motion to dismiss.
    *See Kapellas v. Kofman*, 1 Cal.3d 20 (1969).

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**